UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| LUIS JIMENEZ,<br><br>    Plaintiff<br><br>v.<br><br>GEICO SECURE INSURANCE COMPANY,<br><br>    Defendant | Case No.: 2:23-cv-01290-APG-BNW<br><br>**Order Granting Defendant's Motion to Dismiss**<br><br>[ECF No. 13] |

While driving drunk, plaintiff Luis Jimenez caused an accident that killed Joseph Wolford. Defendant GEICO Secure Insurance Company insured Jimenez under a bodily injury policy with a policy maximum of $15,000 per person. After learning of the accident and investigating it, GEICO did not contact the Wolford estate. When the Wolford estate later contacted GEICO, GEICO tendered $15,000 the next day to Wolford's son. Wolford's son rejected the offer and Wolford's estate eventually sued Jimenez in state court, obtaining a jury verdict against him for over $11 million. Jimenez now sues GEICO, alleging that its failure to affirmatively settle with the Wolford estate caused Jimenez to be sued. Jimenez brings claims for breach of contract, insurance bad faith, and violation of the Nevada Unfair Claims Settlement Practices Act, specifically Nevada Revised Statutes (NRS) § 686A.310(1)(e).

GEICO moves to dismiss the complaint with prejudice, contending that an insurer cannot be liable for failure to settle or for bad faith before the injured party demands settlement. Jimenez opposes, arguing that the lack of a settlement demand does not preclude his claims. Because Jimenez fails to plausibly allege unreasonable conduct by GEICO or causation between

GEICO's conduct and the state lawsuit, I grant the motion to dismiss.  I will grant Jimenez leave to amend if he can allege additional facts that support a claim.

I. **BACKGROUND**[1]

On May 22, 2017, Jimenez caused a vehicle accident that killed Wolford. ECF No. 11 at 2-3.  The police report for the accident noted that Jimenez's blood alcohol content was above the legal limit, he was driving at around 75 miles per hour in a 35 miles per hour zone, he ran a stop sign and slammed into Wolford's vehicle, and Wolford died from blunt force trauma. *Id.* at 3.  The police report included witness statements confirming those facts. *Id.* at 3-4.  Jimenez was hospitalized and then incarcerated. *Id.* at 4.  The day after the accident, the Las Vegas Review Journal (LVRJ) reported on the accident and Jimenez's arrest on a fatal DUI charge. *Id.*

On June 14, 2017, Jimenez's parents' insurer (Farmers) contacted GEICO to inform it that Farmers would not cover the accident. *Id.*  That day, GEICO opened a claim and began to investigate. *Id.* at 4-5.  It obtained contact information for Wolford's heirs (of which he had seven). *Id.* at 3,4.  The next day, GEICO reviewed the LVRJ article . *Id.* at 5.  By June 26, 2017, GEICO had obtained and reviewed the police report. *Id.* at 5.  GEICO did not initiate settlement negotiations or contact Wolford's heirs. *Id*. at 5.  Jimenez alleges that "Geico intentionally decided to withhold tender . . . to conceal its connection to and responsibility to pay for the subject incident and/or buy itself additional time to discern any reason to avoid paying the claim." *Id.* at 6.

On July 24, 2017, an attorney representing Wolford's estate contacted GEICO. *Id.*  The next day, GEICO tendered $15,000 to Wolford's son using the contact information GEICO had

---

[1] These facts are taken from Jimenez's First Amended Complaint, ECF No. 11, and I take them as true for purposes of this motion.

obtained in June. *Id.* Wolford's son rejected the offer. *Id.* In April 2019, the Wolford estate sued Jimenez in state court and obtained a jury verdict against him for over $11 million. *Id.* at 6-7. Jimenez alleges that the suit was "a direct and proximate result of [GEICO's] unreasonable delay" and "GEICO's minimizing and ignoring the significance of the death of [Wolford], failure to investigate, and efforts to delay tender for months since the time of the accident." *Id.* at 6.

## II. ANALYSIS

In considering a motion to dismiss, I take all well-pleaded allegations of material fact as true and construe the allegations in a light most favorable to the non-moving party. *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017). However, I do not assume the truth of legal conclusions merely because they are cast in the form of factual allegations. *Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1163 (9th Cir. 2017). Mere recitals of the elements of a cause of action, supported by conclusory statements, do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must also make sufficient factual allegations to establish a plausible entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). A claim is facially plausible when the complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Iqbal*, 556 U.S. at 678. When the claims have not crossed the line from conceivable to plausible, the complaint must be dismissed. *Twombly*, 550 U.S. at 570.

### A. Bad Faith[2]

Jimenez claims that GEICO breached the covenant of good faith and fair dealing because it failed to affirmatively contact the Wolfords to attempt to settle their claim. GEICO argues that

---

[2] Jimenez brings two claims for breach of the covenant of good faith and fair dealing, one based in contract and one based in tort. I will analyze the two claims together because they are based on the same alleged conduct. *See* ECF No. 11 at 10-15.

3

there are no allegations that the Wolfords demanded to settle within policy limits or even indicated interest in settling, and Nevada law does not support a claim of bad faith without such a demand.  GEICO urges me to follow a case from this district that has similar facts and where the magistrate judge concluded that "Nevada insurance law does not include within it a bad faith claim based on an insurer's failure to initiate settlement with a third party pre-demand." *Chowning v. Nationwide Ins. Co. of Am.*, No. 2:22-cv-00798-CDS-EJY, 2023 WL 2971435, at *6. (D. Nev. Jan. 12, 2023).  Jimenez argues that *Chowning* was incorrectly decided because it relies on a California case that is contradicted by other California law.  Jimenez contends that in the absence of binding law, the Supreme Court of Nevada would not bar a bad faith claim for lack of a demand from the injured party.  Jimenez cites cases from other states holding that a lack of a formal offer to settle does not preclude a bad faith claim.

"Nevada law recognizes the existence of an implied covenant of good faith and fair dealing in every contract." *Pemberton v. Farmers Ins. Exch.*, 858 P.2d 380, 382 (Nev. 1993).  In Nevada, breach of this covenant by insurers constitutes bad faith and gives rise to a claim in tort. *Id.* at 793; *United States Fid. & Guar. Co. v. Peterson*, 540 P.2d 1070, 1071 (Nev. 1975).  "Bad faith is established where the insurer acts unreasonably and with knowledge that there is no reasonable basis for its conduct." *Guaranty Nat'l Ins. Co. v. Potter*, 912 P.2d 267, 272 (Nev. 1996).  Bad faith conduct includes "the unreasonable denial or delay in payment of a valid claim," but it is not limited to that. *Id.*  "Generally, an insurer who has no opportunity to settle within policy limits is not liable for an excess judgment for failing to settle the claim.  Other courts have held that the absence of a settlement offer within policy limits is not dispositive of . . . the insurer's good or bad faith, but just one of the factors . . . ." *Allstate Ins. Co. v. Miller*, 212 P.3d 318, 328 (Nev. 2009) (en banc) (simplified).  Or, if settlement is possible beyond

4

policy limits, there could be bad faith if there is evidence that the insured would be willing to contribute the excess amount. *See id.*

The Supreme Court of Nevada has not decided the precise question of whether a settlement demand from the claimant is a prerequisite to an insurance bad faith claim. *See Chowning*, 2023 WL 2971435, at *6. Neither party cites controlling law on this point. Though Jimenez cites out-of-state cases holding that a formal settlement offer is not required, none of them supports a finding of bad faith unless there was an opportunity to settle.[3] When the Supreme Court of Nevada has not spoken on an issue, I generally predict how it would adjudicate the issue. *Orkin v. Taylor*, 487 F.3d 734, 741 (9th Cir. 2007). However, prediction is unnecessary here because even if I agree with Jimenez that a settlement demand is not required for a bad faith claim, and even viewing the facts in the light most favorable to Jimenez, he has not plausibly alleged that GEICO acted in bad faith.

GEICO was first plausibly notified of the potential claim when Farmers contacted it on June 14.[4] GEICO then began to investigate the claim immediately, obtaining the Wolfords' contact information, requesting the police report, and reviewing the LVRJ article. GEICO received the police report about two weeks later, which documented the accident, Wolford's

---

[3] *See Alt v. Am. Family Mut. Ins. Co.*, 237 N.W.2d 706, 708, 711 (Wis. 1976) (holding only that a legally binding offer by the claimant is not a prerequisite for a bad faith action and explaining that Wisconsin law finds bad faith when insurers "fail[] to settle when there was an opportunity to do so"); *Rova Farms Resort, Inc. v. Investors Ins. Co.*, 323 A.2d 495, 507 (N. J. 1974) (holding that an insurer has a duty to affirmatively negotiate settlement within policy coverage, but suggesting that an insurer is not liable if there was "no realistic possibility of settlement within policy limits"). Another case Jimenez cites suggested that it is "preferable" for an insurer to invite claimants to negotiate settlement within policy limits, but it did not hold that failure to do so was bad faith. *Farmers Ins. Exch. v. Schropp*, 567 P.2d 1359, 1367 (Kan. 1977).

[4] To the extent Jimenez contends that GEICO had notice of the accident earlier due to the LVRJ article, he cites no facts that anyone at GEICO actually read the article that day or law that an insurer has a duty to monitor the local news and then search its own records to discern if a reported accident involved one of its insureds.

death, and the evidence supporting Jimenez's fault.  There are no allegations that during this time the Wolfords contacted GEICO or otherwise expressed interest in settling.  Therefore, Jimenez has not plausibly alleged that GEICO had an opportunity to settle, either within policy limits or outside of policy limits with Jimenez's contributions.

More importantly, when the Wolford estate reached out, GEICO tendered the policy maximum to Wolford's son the next day.  Less than six weeks passed between Farmers notifying GEICO about the claim and GEICO tendering its policy limit, and even less between GEICO receiving the police report and tendering.  Jimenez does not allege that the Wolfords would have accepted $15,000 to fully settle the claim if GEICO had reached out or tendered sooner.  Thus, the first amended complaint does not plausibly allege that GEICO unreasonably delayed payment, and that such a delay caused the Wolford estate to sue Jimenez.  Jimenez does not plausibly allege any other unreasonable conduct.  I therefore grant GEICO's motion to dismiss Jimenez's bad faith claims.

**B.  NRS § 686A.310**

Under the Nevada Unfair Claims Settlement Practices Act, "an insurer is liable to its insured for any damages sustained by the insured as a result of" unfair practices. NRS § 686A.310(2).  One such unfair practice is the "fail[ure] to effectuate prompt, fair and equitable settlements of claims in which liability of the insurer has become reasonably clear." *Id.* at § 686A.310(1)(e). Jimenez alleges that GEICO violated the statute by failing to promptly settle the claim and unreasonably delaying payment of the claim.  GEICO argues that I should follow *Chowning*, which held that a § 686A.310(1)(e) claim was futile without a settlement demand from the injured party.  Jimenez argues *Chowning* was wrongly decided because the plain language of the statute does not require a settlement demand as a pre-requisite to its violation.

He also contends that the statute's legislative history shows that its purpose is to protect the insured, so it should not be interpreted as requiring a settlement demand.

Jimenez has not plausibly alleged a violation of § 686A.310 for two reasons. First, in the context of a § 686A.310 claim, the Supreme Court of Nevada has applied the rule in *Miller* that "[g]enerally, an insurer who has no opportunity to settle within policy limits is not liable for an excess judgment for failing to settle the claim." *Cromer v. Bristol W. Ins. Grp.*, No. 63385, 131 Nev. 1268, 2015 WL 4611934, at * (Nev. 2015) (quoting *Miller*, 212 P.3d at 328). There are no allegations to suggest that GEICO had an opportunity to settle within policy limits or in excess of policy limits with contribution from Jimenez.

Second, Jimenez failed to plausibly allege a causal connection between GEICO's conduct and his damages as required by § 686A.310(2). Jimenez alleges that "[a]s a direct and proximate result" of GEICO's conduct, the Wolfords sued him and he became liable for the jury verdict and suffered other damages. ECF No. 11 at 17. But these are conclusory statements. There are no plausible allegations that the Wolford estate would have settled or that Jimenez could have avoided litigation if GEICO had affirmatively tried to settle sooner. In fact, the complaint suggests an absence of causation because the Wolfords rejected the $15,000 that GEICO offered the day after first contact in July 2017 and waited nearly two years to sue Jimenez. Therefore, I grant GEICO's motion to dismiss the statutory claim.

**C. Breach of Contract**

Jimenez alleges that GEICO "was under a contractual obligation to timely investigate and settle any actual or potential or likely" bodily injury claims against him. ECF No. 11 at 8. GEICO allegedly breached that contract by "fail[ing] to timely settle the claim and unreasonably

delay[ing] payment of the claim." *Id.* at 9.  Jimenez does not allege that GEICO breached any other contractual obligations.

Jimenez has not plausibly alleged that GEICO breached.  He does not point to a contract provision that obligates GEICO to affirmatively reach out to potential claimants.  GEICO timely investigated the claim within a day of being notified of it and tendered the policy maximum the day after the Wolford estate contacted it.  Therefore, I dismiss the breach of contract claim.

### D. Amendment

"[A] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quotation omitted).

If the sole basis of Jimenez's claims is GEICO's failure to affirmatively contact or attempt to settle with the Wolford family before it tendered the policy maximum is, then Jimenez cannot plausibly state a claim for bad faith, violation of NRS § 686A.310(1)(e), or breach of contract.  However, if Jimenez can allege other conduct that would support a claim, I grant him leave to amend to add those facts.

## IV.  CONCLUSION

I THEREFORE ORDER that defendant GEICO Secure Insurance Company's motion to dismiss **(ECF No. 13) is GRANTED in part**.  All claims are dismissed without prejudice.  I grant Jimenez leave to amend by May 15, 2024, if facts exist to do so.  If he does not, I will dismiss the case with prejudice, enter judgment against Jimenez, and close the case.

DATED this 12th day of April, 2024.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE